## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| **Agile Journeys LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **Civil Action No. 6:22-CV-02272** |
| | § | |
| **The Walt Disney Company and** | § | |
| **Walt Disney Parks and Resorts** | § | **Jury Trial Demanded** |
| **U.S., Inc.,** | § | |
| | § | |
| *Defendants*. | § | |

### Patent Case Management Report

Pursuant to the Court's Order dated January 17, 2023 (Dkt. No. 31), Federal Rule of Civil Procedure 26(f), and Local Rule 3.02(a), Plaintiff Agile Journeys LLC ("Plaintiff" or "Agile Journeys") and Defendants The Walt Disney Company and Walt Disney Parks and Resorts U.S., Inc., ("Defendants" or "WDPR") (collectively, the "Parties") provide this Patent Case Management Report.

The Parties have agreed[1] on the following dates and discovery plan pursuant to Fed. R. Civ. P. 26(f):

---

[1] Defendants respectfully request that the Court temporarily defer entering a Scheduling Order or beginning Discovery at this time because Defendants have not answered or otherwise responded to the Complaint. Defendants anticipate on February 13, 2023 filing a dispositive motion to dismiss Plaintiff's claims in their entirety.  Thus, Defendants request that a Scheduling Order not be entered and Discovery not be authorized until the Defendants file an Answer (i.e., the "Discovery Start Date"). Plaintiff opposes this

| Deadline or Event | Date |
|---|---|
| Mandatory Initial Disclosures (pursuant to Fed. R. Civ. P. 26(a)(1) as amended effective December 1, 2000)<br><br>[Court recommends 30 days after CMR meeting] | Wednesday, March 1, 2023 |
| Certificate of Interested Persons and Corporate Disclosure Statement<br><br>[each party who has not previously filed must file immediately] | Completed<br>*See* Dkt. Nos. 21, 23 (Agile Journeys), Dkt. Nos. 24, 25 (WDPR) |
| Motions to Add Parties or to Amend Pleadings<br><br>[Court recommends 1 – 2 months after CMR meeting] | Monday, April 3, 2023 |
| Disclosure of Infringement and Damages Contentions<br><br>[1 month after CMR meeting] | Friday, March 31, 2023 |
| Disclosure of Non-Infringement and Invalidity Contentions<br><br>[within 1 month of above] | Monday, May 15, 2023 |
| Parties shall file a Joint Motion for Entry of an Order Limiting Claims and Prior Art | Monday, May 29, 2023 |
| Initial Identification of Disputed Claim Terms<br><br>[within 1 month of Non-Infringement and Invalidity Contentions] | Thursday, June 1, 2023 |
| Proposed Claim Term Constructions<br><br>[within 1 month of Identification of Disputed Claim Terms] | Monday, July 3, 2023 |
| Joint Claim Construction Statement | Monday, July 17, 2023 |

request and believes that the case should progress according to the Court's standard schedule.

| Deadline or Event | Date |
|---|---|
| [within 2 weeks of above] | |
| Technology Tutorial Conference<br>[within 2–4 weeks of above]<br>(if requested, insert date; otherwise, leave blank) | Week of August 7th or 14th, 2023 |
| Plaintiff's Claim Construction Brief<br>[within 1 month of above] | Friday, September 15, 2023 |
| Defendant's Response Brief<br>[within 1 month of above] | Monday, October 16, 2023 |
| Joint Pre-Hearing Claim Construction Statement listing terms for construction and Parties' proposed constructions<br>[within 1 week of above] | Monday, October 23, 2023 |
| Claim Construction Hearing<br>[within 3 weeks of above] | Week of November 13th or 27th (subject to the Court's availability) |
| Disclosure of Intent to Rely on Advice of Counsel as a Defense and Amendment of Damages, Infringement and Invalidity Contentions [no sooner than 3 months and no later than 5 months of above] | Wednesday, April 17, 2024 |
| Amendment of Non-Infringement Contentions | Wednesday, May 1, 2024 |
| Disclosure of Expert Reports on Issues Where the Party Bears the Burden of Proof | Monday, June 3, 2024 |
| Disclosure of Rebuttal Expert Reports<br>[within 1 month of above] | Wednesday, July 3, 2024 |
| Fact Discovery Deadline | Wednesday, May 13, 2024[2] |

---

[2] The Parties respectfully request that they be permitted to disclose expert reports on issues where the party bears the burden of proof after the close of fact discovery.

| Deadline or Event | Date |
|---|---|
| [within 2 months of Amendments] | |
| Expert Discovery Deadline<br><br>[within 1 month of above] | Friday, August 2, 2024 |
| Dispositive Motions and *Daubert* Motions<br><br>[Court requires 5 months or more before trial term begins] | Friday, August 30, 2024 |
| Responses to Dispositive Motions and *Daubert* Motions (Per Local Rule 3.01(d)) | Friday, September 20, 2024 |
| Reply to Dispositive Motions (Per Local Rule 3.01(d)) | Friday, October 4, 2024 |
| Meeting In Person to Prepare Joint Final Pretrial Statement<br><br>[10 days before Joint Final Pretrial Statement] | Tuesday, December 10, 2024 |
| Joint Final Pretrial Statement (Including a Single Set of Jointly Proposed Jury Instructions and Verdict Form, Voir Dire Questions, Witness Lists, Exhibit Lists with Objections on Approved Form)<br><br>[Court recommends 6 weeks before Trial] | Friday, December 20, 2024 |
| All Other Motions Including Motions In Limine, Trial Briefs | Friday, January 17, 2025 |
| Trial Term Begins<br><br>[Trial term must not be less than 5 months after dispositive motions deadline (unless filing of such motions is waived); district judge trial terms beginning on the first business day of each month; | February 2025 |

---

However, should the Court order fact discovery to close after expert reports are disclosed, the parties agree that experts may amend or supplement their reports if relevant facts are discovered during fact discovery after reports have been disclosed.

| Deadline or Event | Date |
|---|---|
| trials before magistrate judges will be set on a date certain after consultation with the parties] | |
| Estimated Length of Trial [trial days] | 5 |
| Jury / Non-Jury | Jury |
| Mediation Deadline<br><br>[Absent arbitration, mediation is mandatory; Court recommends either 2 – 3 months after CRM meeting, or just after discovery deadline. If the parties do not select a mediator in the CMR, the Court will appoint one from its List of Certified Mediators.] | Wednesday, May 3, 2024<br><br>The Parties will continue to meet and confer and either submit the name of an agreed mediator or ask the Court to appoint one by May 3, 2023. |
| All Parties Consent to Proceed Before Magistrate Judge | No |

## I.      Meeting of Parties in Person

Lead counsel must meet *in person* and not by telephone absent an order permitting otherwise. Counsel will meet in the Middle District of Florida, unless counsel agree on a different location. Pursuant to Local Rule 3.02(a)(1), a video teleconference meeting was held on Monday, January 30, 2023, at 3:00 PM EST and was attended by Anthony Bruster and Andrew Wright (for Agile Journeys) and Celine J. Crowson (lead counsel), Mark R. Cheskin, Damon M. Lewis, and Nicholas W. Rotz (for WDPR). The Parties previously requested and were granted leave of Court to conduct the case management conference via video. *See* Dkt. No. 47.

## II.     Pre-Discovery Initial Disclosures of Core Information

## Fed. R. Civ. P. 26(a)(1)(A)–(D) Disclosures

Fed. R. Civ. P. 26 provides that these disclosures are mandatory in Track Two and Track Three cases, except as stipulated by the parties or otherwise ordered by the Court:

The parties agree to exchange information described in Fed. R. Civ. P. 26(a)(1)(A)–(D) on Wednesday, March 1, 2023.

Below is a description of information disclosed or scheduled for disclosure, including electronically stored information as further described in Section III below.

<u>Agile Journeys</u>

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), Agile Journeys will provide the name and, if known, the address and telephone number of each individual likely to have discoverable information, along with the subjects of that information, that Agile Journeys may use to support its claims and defenses in this action and, pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), a copy or description by category and location of all documents, electronically stored information, and tangible things that Agile Journeys has in its possession, custody, or control and may use to support is claims and defenses. Relevant documents will likely include those related to conception, reduction to practice, patent prosecution, attempts to commercialize the claimed inventions, and pre-suit contacts with representatives of Disney.

<u>WDPR</u>

WDPR will provide: (1) pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information- along with the subjects of that information—that WDPR may use to support its defenses and counterclaims, if any are asserted; and (2) pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that WPDR has in its possession, custody, or control and may use to support its defenses and counterclaims, if any are asserted.

## III.   Electronic Discovery

The parties have discussed issues relating to disclosure or discovery of electronically stored information ("ESI"), including Pre-Discovery Initial Disclosures of Core Information in Section II above, and agree that:

One or more of the parties anticipate the disclosure or discovery of ESI in this case.

If disclosure or discovery of ESI is sought by any party from another party, then the following issues shall be discussed:

### A.   The form in which ESI should be produced.

The following parameters shall apply to Electronically Stored Information ("ESI") production:

> a. **General Document Image Format.** Each electronic document shall be produced in pdf format or single-page Tagged Image File Format

("TIFF") format. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. TIFF image files should be provided in an "Images" folder.

b. **Unitizing Documents.** In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). As an example, the documents contained in a binder should be produced in the same order in which they appear in the binder. The parties will undertake reasonable efforts to have their vendors logically unitize documents correctly, maintain parent-child relationships, and will commit to address situations of improperly unitized documents.

c. **Text-Searchable Documents.** The producing party shall use optical character recognition ("OCR") to digitize the text of documents originating as paper. If such digitized documents are produced in TIFF format, (1) text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document and (2) text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

d. **Unique IDs.** If documents are produced in TIFF format, each image should have a unique filename, which corresponds to the Bates number of that page. Such filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

e. **Parent-Child Relationships.** The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document(s) should be consecutively

8

produced immediately after the parent-document, except attachments withheld on privilege grounds, which will be indicated on the associated privilege log, and the withheld attachment will be replaced with a slip sheet stating "Document withheld for privilege."

f. **Native Files.** A party that receives a document production in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format.

g. **Data Load Files for TIFF Production.** If documents are produced in TIFF format, productions shall include, in addition to single-page TIFFs and Text Files, (a) an ASCII delimited data file (.txt, .dat., or .csv) and (b) an image load file (.opt or .lfp) that can be loaded into commercially acceptable production software (*e.g.*, Concordance, Relativity, XERA). Each TIFF in a production must be referenced in the corresponding image load file. The total number of pages referenced in a production image load file should match the total number of TIFF files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

h. **Password Protected Files.** The producing party shall produce passwords for any non-privileged password-protected files to the extent passwords are reasonably available.

i. **System Files.** Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

j. **Deduplication.** Documents may be globally de-duplicated at the family group level.

k. **Source Code.** The Parties agree that ESI search terms will not be applied to source code.

l. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the stipulations referenced below. Each responsive

document produced in native format will have its confidentiality designation stamped on a slip-sheet labeled with such document's Bates number.

**B.     Nature and extent of the contemplated ESI disclosure and discovery, including specification of the topics for such discovery and the time period for which discovery will be sought.**

The Parties agree to meet and confer on whether ESI is necessary and, if necessary, the scope of such production.

Discovery will be sought for the period of infringement, not to exceed six (6) years prior to the filing of this lawsuit. Additionally, discovery will be sought related to contact between the inventors and Disney dating back to at least January of 2002. Discovery will further be sought related to the alleged inventors' conception and reduction to practice of the invention claimed in the Asserted Patent, the prosecution of the Asserted Patent, and other issues related to the Asserted Patent, dating back to at least 1999.

**C.     Whether the production of metadata is sought for any type of ESI, and if so, what types of metadata.**

The minimum metadata fields as set forth below must be produced to the extent that metadata exists for a particular document. To the extent that such metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing herein shall require any party to extract, capture, collect, or produce such data. The Parties are not obligated to populate manually any metadata field. Fields showing the date and time that the document was sent and

received, as well as the complete distribution list, shall generally be included in the production if such fields exist. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct; however, the parties acknowledge that such metadata may not always be accurate and might instead contain irrelevant or incorrect information generated during the collection process. The following metadata shall be included, if available:

| FIELDNAME | DESCRIPTION |
| --- | --- |
| BegBates | Beginning Bates production number |
| EndBates | Ending Bates production number |
| BegAttach | Beginning production family number |
| EndAttach | Ending production family number |
| Page Count | Total page count per document |
| Custodian | Human custodian, if any, of the document produced |
| MD5/SHA Value | Facilitates de-duplication |
| Designation | Confidentiality designation |
| Author | Author of document |
| From | E-mail sender |
| To | E-mail recipient or paper recipients |
| CC | E-mail CC or paper CC |
| BCC | E-mail BCC or paper BCC |
| Subject | Subject of e-mail |
| Sent Date | Date an E-mail was sent |
| File Extension | File extension of original document |
| File Name | Attachment or electronic loose filename |
| File Size | Document file size in bytes |

| FIELDNAME | DESCRIPTION |
|---|---|
| Date Modified | Document last modified time or document sent time |
| Date Created | Document creation date |

> **D.** **The various sources of ESI within a party's control that should be searched for ESI, and whether either party has relevant ESI that it contends is not reasonably accessible under Rule 26(b)(2)(B), and if so, the estimated burden or costs of retrieving and reviewing that information.**

Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

Absent a showing of good cause, voicemails, PDAs, and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

E-mail discovery shall proceed under the following framework:

E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures. E-mail production requests shall identify the custodian, search terms, and time frame. Each requesting party shall limit its e-mail production requests to a total of five (5) custodians for all such requests. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this

specific case.

Each requesting party shall limit its e-mail production requests to a total of seven (7) search terms per custodian. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or translations of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

The parties agree to negotiate regarding e-mail production requests in good faith.  To this end, if number of hits for a given search term within a given time period is over 1000, the parties agree to confer in good faith in an attempt to narrow

the number of resulting hits.

> **E.  The characteristics of the party's information systems that may contain relevant ESI, including, where appropriate, the identity of individuals with special knowledge of a party's computer systems.**

To the best of the Parties' current knowledge, their ESI anticipated to be sought in discovery is stored on standard computers that do not require any specialized knowledge to access the systems.

> **F.  Any issues relating to preservation of discoverable ESI.**

The Parties currently **<u>do not</u>** anticipate any issues related to preservation of discoverable ESI.

> **G.  Assertions of privilege or of protection as trial-preparation materials, including whether the parties can facilitate discovery by agreeing on procedures and, if appropriate, an Order under the Federal Rule of Evidence 502. If the parties agree that a protective order is needed, they shall attach a copy of the proposed order to the Case Management Report. The parties should attempt to agree on protocols that minimize the risk of waiver. Any protective order shall comply with Local Rule 1.11 and Section IV. F. below on Confidentiality Agreements.**

If documents, information or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced in this case, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally produces documents, information or other material it reasonably believes are protected

under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information or other material by promptly notifying the recipient(s) and providing a privilege log for the inadvertently or unintentionally produced documents, information or other material. The recipient(s) shall gather and return all copies of such documents, information or other material to the producing Party, except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing Party. The Parties agree that they shall not be required to log privileged communications occurring after the filing of this lawsuit.

**H.     Whether the discovery of ESI should be conducted in phases, limited, or focused upon particular issues.**

Plaintiff **<u>does not anticipate</u>** needing to conduct ESI discovery in phases.

If discovery is not stayed as described in FN1 above, Defendants **<u>anticipate</u>** needing to conduct ESI discovery in phases, limited, or focused on particular issues. For example, Defendants anticipate filing a potentially dispositive motion to dismiss Plaintiff's claims on multiple bases. Discovery relevant to claims that may be dismissed if Defendants' motion is granted in whole or in part should be postponed until the Court resolves Defendants' motion.

**I.     If a preliminary pre-trial conference is requested, a motion shall also be filed pursuant to Rule 16(a), Fed. R. Civ. P.**

All parties agree that a hearing **is not** needed at this time because they expect to be able to promptly resolve these disputes without assistance of the Court.

## IV.    Agreed Discovery Plan for Plaintiffs and Defendants

### A.    Certificate of Interested Persons and Corporate Disclosure Statement

This Court has previously ordered each party, governmental party, intervenor, non-party movant, and Rule 69 garnishee to file and serve a Certificate of Interested Persons and Corporate Disclosure Statement using a mandatory form. No party may seek discovery from any source before filing and serving a Certificate of Interested Persons and Corporate Disclosure Statement. A motion, memorandum, response, or other paper—including emergency motion—is subject to being denied or stricken unless the filing party has previously filed and served its Certificate of Interested Persons and Corporate Disclosure Statement. Any party who has not already filed and served the required certificate is required to do so immediately.

Every party that has appeared in this action to date has filed and served a Certificate of Interested Persons and Corporate Disclosure Statement, which remains current. The Parties have filed their disclosure statements as required by Federal Rule of Civil Procedure 7.1 and Local Rule 3.03. See Dkt. No. 21 (Agile Journeys), Dkt. No. 24 (WDRP).

### B.    Discovery Not Filed

The parties shall not file discovery materials with the Clerk in the ordinary

course. The parties further agree as follows: **<u>N/A</u>**

### C.    Limits on Discovery

Absent leave of Court, the parties may take no more than ten depositions per side (not per party). Fed. R. Civ. P. 30(a)(2)(A); Fed. R. Civ. P. 31(a)(2)(A). Absent leave of Court, the parties may serve no more than twenty-five interrogatories, including sub-parts. Fed. R. Civ. P. 33(a). Absent leave of Court or stipulation of the parties each deposition is limited to one day of seven hours. Fed. R. Civ. P. 30(d)(2). The parties may agree by stipulation on other limits on discovery. The Court will consider the parties' agreed dates, deadlines, and other limits in entering the scheduling order. Fed. R. Civ. P. 29. In addition to the deadlines in the above table, the parties have agreed to further limit discovery as follows:

### 1.    Electronic Service

The Parties consent to service by electronic means as set forth in Federal Rule of Civil Procedure 5(b)(2)(E) and agree that such service shall be deemed complete upon transmission, provided that the sender does not receive any indication that such electronic transmission was unsuccessful. The Parties agree that a document is deemed served on a particular day if sent by midnight Eastern Time on that calendar day; otherwise, it is deemed served on the next calendar day.

### 2.    Depositions

The Parties agree to the Court's default limits with the understanding that the ten-deposition limit does not include depositions of the Parties' expert witnesses.

### 3. Requests to Admit

The Parties agree there is no limit on the number of requests for admission to establish the authenticity of documents. Requests for document authentication shall be clearly denoted as such.

### 4. Supplementation of Discovery

Pursuant to Federal Rule of Civil Procedure 26(e), the Parties will supplement discovery in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

### D. Discovery Deadline

Each party shall timely serve discovery requests so that the rules allow for a response prior to the discovery deadline. The Court may deny as untimely all motions to compel filed after the discovery deadline. In addition, the parties agree as follows: **N/A**

### E. Disclosure of Expert Testimony

On or before the dates set forth in the above table for the disclosure of expert reports, the parties agree to fully comply with Fed. R. Civ. P. 26(a)(2) and 26(e). Expert testimony on direct examination at trial will be limited to the opinions, basis, reasons, data, and other information disclosed in the written expert report disclosed pursuant to this order. Failure to disclose such information may result in the

exclusion of all or part of the testimony of the expert witness. The parties agree on the following additional matters pertaining to the disclosure of expert testimony:

The Parties stipulate that draft expert reports and communications with experts providing such reports are not discoverable pursuant to Rule 26(b)(4). However, all materials that an expert relied upon in forming the opinions expressed in a final report shall be discoverable. Expert testimony on direct examination at trial will be limited to the opinions, bases, reasons, data, and other information disclosed in the expert's written report disclosed pursuant to this Order. Each side shall be limited to four testifying experts at trial.

### F. Confidentiality Agreements

Whether documents filed in a case may be filed under seal is a separate issue from whether the parties may agree that produced documents are confidential. The Court is a public forum, and disfavors motions to file under seal. The Court will permit the parties to file documents under seal only upon a finding of extraordinary circumstances and particularized need. *See Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir. 1992); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985). A party seeking to file a document under seal must file a motion to file under seal requesting such Court action, together with a memorandum of law in support. The motion, whether granted or denied, will remain in the public record.

The parties may reach their own agreement regarding the designation of

materials as "confidential." There is no need for the Court to endorse the confidentiality agreement. The Court discourages unnecessary stipulated motions for a protective order. The Court will enforce appropriate stipulated and signed confidentiality agreements. *See* Local Rule 3.05. Each confidentiality agreement or order shall provide, or shall be deemed to provide, that "no party shall file a document under seal without first having obtained an order granting leave to file under seal on a showing of particularized need." With respect to confidentiality agreements, the parties agree as follows:

The Parties are negotiating an appropriate confidentiality agreement to govern production of documents, production and inspection of source code, and privilege issues. The Parties shall either inform the Court of the fact that a confidentiality agreement has been reached or shall otherwise present any disputed issue concerning a confidentiality agreement by April 1, 2023.

### G. Other Matters Regarding Discovery

The Parties plan to discuss appropriate procedures for production and inspection of source code with the intent of reaching an agreement regarding the same.

### V.    Settlement and Alternative Dispute Resolution.

### A.    Settlement

The Parties believe that settlement is **unlikely** at this time due to the uncertainty associated with the early phases of patent litigation.

The parties **do not** request a settlement conference before a United States Magistrate Judge.

### B.    Arbitration

The Local Rules no longer designate cases for automatic arbitration, but the parties may elect arbitration in any case. The parties **do not** agree to arbitrate.

### C.    Mediation

Absent arbitration or a Court order to the contrary, the parties in every case will participate in Court- annexed mediation as detailed in Chapter Nine of the Court's Local Rules. The Parties will continue to meet and confer and either submit the name of an agreed mediator or ask the Court to appoint one by May 3, 2023. The Parties have agreed to the date stated in the table above as the last date for mediation. The list of mediators is available from the Clerk, and is posted on the Court's web site at http://www.flmd.uscourts.gov.

### D.    Other Alternative Dispute Resolution

The parties intend to pursue the following other methods of alternative dispute resolution: No formal ADR contemplated at this time.

Dated:       February 8, 2023                    Respectfully submitted,

_____
**ANDREW J. WRIGHT**

**STEVEN G. KOEPPEL**
Florida State Bar No. 602851
**YESLOW, KOEPPEL**
      **& ANDERSON P.A.**
1617 Hendry Street, Suite 205
Fort Myers, Florida 33901
239.337.4343 (telephone)
239.337.5762 (facsimile)
steve@yklegal.com

**ANTHONY K. BRUSTER**
*Admitted Pro Hac Vice*
**SHAWN A. LATCHFORD**
*Admitted Pro Hac Vice*
**ANDREW J. WRIGHT**
*Admitted Pro Hac Vice*
**BRUSTER PLLC**
680 North Carroll Avenue, Suite 110
Southlake, Texas 76092
817.601.9564 (telephone)
817.296.2929 (facsimile)
akbruster@brusterpllc.com
shawn@brusterpllc.com
andrew@brusterpllc.com

**JAY P. KESAN**
*Admitted Pro Hac Vice*
**CECIL E. KEY**
*Admitted Pro Hac Vice*
**KEY IP LAW, PLLC**

1934 Old Gallows Road, Suite 350
Vienna, Virginia 22182
703.752.6276 (telephone)
jay@keyiplaw.com
cecil@keyiplaw.com

**COUNSEL FOR PLAINTIFF
AGILE JOURNEYS LLC**


_/s/ Celine J. Crowson (by
permission)_

Mark R. Cheskin, Esq.
Fla. Bar No. 708402
Hogan Lovells US LLP
600 Brickell Avenue, Suite 2700
Miami, Florida 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
mark.cheskin@hoganlovells.com

Celine J. Crowson, Esq. (*pro hac vice*)
Damon M. Lewis, Esq. (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
celine.crowson@hoganlovells.com
damon.lewis@hoganlovells.com

*Counsel for Defendants The Walt
Disney Company and Walt Disney
Parks and Resorts U.S., Inc.*

23